David **DIAMOND**, Appellant,

v.

Robert **WAGSTAFF**, Appellee.

No. S–5492.

Supreme Court of Alaska.

May 13, 1994.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for appellant.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION

David Diamond wished to file a third-party claim for a back injury that was covered under Alaska's workers' compensation act. Diamond brought suit for legal malpractice based upon his contention that attorney Robert Wagstaff incorrectly advised him that permanent injury was a prerequisite to the filing of such a claim, and that Wagstaff did not advise him of the applicable statute of limitations. At trial, the jury found Wagstaff negligent but awarded Diamond no damages. In this appeal, Diamond challenges *inter alia* the superior court's denial of his motions for partial summary judgment, judgment n.o.v., and a new trial.

## II. FACTS AND PROCEEDINGS

On October 25, 1983, in the course of his employment as a driller's helper with Interstate Exploration, Diamond suffered an injury to his lower back when a twenty-foot length of drill pipe, vertically suspended from a mobile drilling rig, fell off a hook and toppled onto him. He subsequently filed a workers' compensation claim for his injury, retaining attorney Chancy Croft to handle the matter.

Dissatisfied with the size of his workers' compensation award, Diamond met with Wagstaff in late August 1984. Diamond asked Wagstaff about filing a third-party claim against Alyeska Pipeline Co. (Alyeska), the company that had hired Interstate Exploration as an independent contractor for the drilling project. During September 1984, Diamond and Wagstaff were in contact a number of times.[1]

The substance of Wagstaff's advice to Diamond is a matter of considerable dispute. Diamond thought that a third-party action might give him leverage against the workers' compensation carrier and cause the carrier to make higher compensation payments. Wagstaff was skeptical, and advised him to establish whether he, Diamond, had suffered a permanent injury. Although both sides agree that Wagstaff expected Diamond to release and gather medical records, they disagree about the importance Wagstaff placed on whether there was a "permanent injury." Wagstaff recalls his advice to have been that Diamond should have a permanent injury in order to justify the expense and work of bringing suit against Alyeska. According to Wagstaff, Diamond knew that he could file the suit himself, whatever its merits. Diamond, in contrast, contends that Wagstaff characterized "permanent injury" as an absolute prerequisite for commencing a third-party action.

In addition, the parties differ about whether Wagstaff advised Diamond at their initial meeting as to the applicable statute of limitations for any third-party claim. Wagstaff was absolutely sure that he had discussed the statute of limitations with Diamond:

> [The statute of limitations is] a subject that I—I bring up with everyone. More than bring up, it's discussed fully until I'm satisfied that the person understands this.... And there was no question that [Diamond] fully understood and knew fully that there was a two year statute of limitations on this claim.
>
> ....
>
> ... I brought the subject up. I said, Dave, we've got to talk about the statute of limitations, the two year statute of limitations on this. And we have to bring the claim within two years or it's forever lost. And that's very important that you under-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Diamond testified to at least one meeting with Wagstaff in addition to the initial August consultation. Diamond's diary lists four communications with Wagstaff's office during September, though the diary does not indicate whether they were in person or by telephone. Diamond testi-

fied that he saw Wagstaff personally, though not necessarily by appointment, four or five times. Wagstaff, for his part, recalled meeting personally with Diamond only once, but acknowledged that there may have been two meetings, and that Diamond may also have telephoned him or may have come by the office and talked with Wagstaff's secretary.

stand that. And he said, yes, I understand that. I know that.

According to Wagstaff, this meeting was the only time that he and Diamond discussed the statute of limitations. Diamond, on the other hand, contends that they never discussed the statute of limitations, and that he was unaware that a limitations period existed.

At Wagstaff's request, Diamond agreed to release his medical records, and Wagstaff subsequently received and examined at least one of them. Wagstaff did not, however, undertake any further investigation into Diamond's claim.

Between September 1984 and May 1985, Diamond and Wagstaff had no contact with each other. During this time, Diamond travelled to San Francisco and Seattle to consult additional physicians concerning his injury. In February 1985, he wrote Croft, his workers' compensation attorney, from California and asked about the continued viability of a claim against Alyeska:

I left Anchorage without seeing Bob Wagstaff and would like to reach him. I am unclear on the viability of a suit in this sort of case if no court action is taken within a year of the injury.

Diamond admitted at trial that when he wrote Croft this letter, he was concerned about whether he would be barred from suing if he did not file his action within a year of his injury. Croft's response to the letter did not include an answer to this question.

On May 9, 1985, Diamond wrote Wagstaff a letter, in which he inquired about the continued viability of a third-party claim:

Whenever I sit down to write you, to ask if we may proceed against Alyeska Pipeline, I remember your words: "is the damage permanent?" It seemed odd to me then that permanent damage was the only litigable damage, and it is part of my continuing frustration with this injury that both justice and healing remain remote, elusive goals.

My back and legs are no better than when I saw you last. I left Anchorage to find a doctor who might be more imaginitive, [sic] inquiring and resourceful.... Lumbar spinal fusion surgery is likely....

Two questions for you:

1.) Would you consider handling the Workers Comp. end of this. Actually, there's nothing to do but receive checks every other week....

2.) When and how will the permanence of this injury be established sufficient to take action against Alyeska?

Wagstaff responded to Diamond's letter on May 17:

Thanks for your letter of May 9. I'm sorry to hear that you are still having problems. I do not handle Worker's Compensation matters myself. An attorney who does is named William Erwin, ... and you may want to contact him.

Unfortunately, I am not really in a position to take on any new work now of the contingent fee variety as I've got more than I can handle. What I suggest is that you contact Irwin [sic], or if he is unacceptable, I can come up with another Worker's Compensation attorney, and discuss your potential third party claim with him. I'm sorry I can't be of more help at this time.

Between the time that he received Wagstaff's response and the time that the statute of limitations ran for a third-party claim against Alyeska—a period of approximately five months—Diamond neither contacted Wagstaff nor consulted another attorney about his potential third-party claim. Diamond underwent back surgery in August 1986. In the spring of 1987, while consulting another attorney about his workers' compensation case, Diamond purportedly learned for the first time that the statute of limitations had run on any third-party claim. In August 1989, Diamond filed a complaint against Wagstaff for legal malpractice.

In June 1992, Diamond filed a motion for partial summary judgment, contending that as a matter of law Wagstaff was liable for failing to include in his response to Diamond's May 1985 letter advice on the statute of limitations applicable to Diamond's potential cause of action against Alyeska. The superior court denied this motion and the case proceeded to trial.

The jury, in a special verdict, found Wagstaff negligent, but determined that his negligence was not a legal cause of Diamond's failure to file a timely suit against Alyeska. The superior court thereafter entered a judgment in Wagstaff's favor. Diamond then moved for a judgment n.o.v., or alternatively for a new trial. The superior court denied the motion, concluding that the evidence allowed "a reasonable jury to find that the failure to give written notice of the statute of limitations was not the cause of plaintiff's failure to timely file the lawsuit, given the testimony that he knew of the two year statute of limitations." Diamond now brings this appeal.

## III. *DISCUSSION*

### A. *Diamond's Motion for Partial Summary Judgment*

Diamond contends that the superior court erred in denying his motion for partial summary judgment as to Wagstaff's liability for legal malpractice. According to Diamond, Wagstaff's only reasonable response to his letter of May 9 would have been to notify him that evidence of a permanent injury was unnecessary in order to file a third-party claim against Alyeska and that Diamond would have had to bring such a claim within two years of his accident. Wagstaff responds that denial of the summary judgment motion is appropriate if one construes Diamond's letter and Wagstaff's response in the context of the other facts appearing in the record.

Relying on two recent cases, *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804 (Alaska 1992), and *Drake v. Wickwire*, 795 P.2d 195 (Alaska 1990), Diamond contends that this court will uphold summary judgment if it finds certain attorney conduct to be negligent as a matter of law. Yet the parties in *Hughes, Thorsness* did not dispute the facts. The issue on appeal was whether a law firm's tactical decision in an adoption proceeding constituted negligence as a matter of law or merely an error in judgment. *See* 838 P.2d at 805–07. *Drake* involved an unusual situation in which this court took judicial notice of the facts as recited in the defendant attorney's brief in an earlier appeal to this court. 795 P.2d at 197 n. 1. Thus, the facts in *Drake* also were "undisputed."

■ Neither of these cases is applicable here. When reviewing a grant or denial of summary judgment, this court determines whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 787 (Alaska 1993). In his opposition to summary judgment, which relied on his own deposition testimony and the affidavit of an expert witness, Wagstaff raised genuine issues of material fact as to whether he properly informed Diamond as to the applicable statute of limitations and whether he had advised that Diamond could not file suit until his injury was found to be permanent.

Diamond attempts to distinguish Wagstaff's showing by contending that communications between them prior to the May 1985 exchange of letters are not relevant to resolution of the summary judgment issues. Essentially, Diamond contends that Wagstaff had a duty, as a matter of law, to remind him of the statute of limitations, and that there is no genuine issue of material fact as to whether he did so.

The superior court correctly rejected this argument, concluding that Diamond's letter should be construed not in a "vacuum," but rather "in context of what else was told at what point, with what degree of detail and what the client's response and ... understanding of those points was." Whether Wagstaff breached a duty depended upon whether Diamond understood that the statute of limitations applied to his claim. The language of Diamond's May 1985 letter does not clearly communicate a misunderstanding on Diamond's part as to the statute of limitations. When construed in the light most favorable to Wagstaff, the facts indicate that Wagstaff apprised Diamond of the applicable statute of limitations, that Diamond understood the applicable statute of limitations, and that Wagstaff construed the letter in the context of his previous contacts with Diamond, reading the letter to relate to whether Diamond should pursue a claim. Further-

more, the parties presented affidavits of experts, the opinions of which conflicted on the appropriateness of Wagstaff's response. Therefore, there was a genuine issue of material fact on this point, and the superior court correctly denied Diamond's motion for partial summary judgment.

### B. *Diamond's Motion for Judgment N.O.V. or a New Trial*

Diamond contends that the superior court erred in denying his motion for a judgment n.o.v. or a new trial. He claims that Wagstaff's theories explaining the jury's decision on causation were based on mere "hypothetical possibilities," and that under this court's holding in *Korean Air Lines Co. v. State*, 779 P.2d 333 (Alaska 1989), the jury could not reasonably rely upon them.

■ When reviewing a motion for a judgment n.o.v., we determine whether evidence, when viewed in the light most favorable to the non-movant, is such that reasonable persons could not differ in their judgment. *Korean Air Lines*, 779 P.2d at 338. We neither weigh the evidence nor judge the credibility of witnesses. Rather, we employ an objective test: If there is room for diversity of opinion among reasonable people, then a jury question exists. *Id.*

■ We review the superior court's denial of a motion for a new trial for an abuse of discretion. *See Lamer v. McKee Indus., Inc.*, 721 P.2d 611, 613 (Alaska 1986). An abuse of discretion occurs only if the evidence supporting the jury's verdict was either completely lacking or slight and unconvincing, so that the verdict was manifestly unreasonable and unjust. Again, we draw all inferences from the facts in the light most favorable to the non-movant. *Id.*

When reviewing a jury verdict under these standards, this court necessarily considers hypothetical explanations for the jury's determination. Otherwise, we would not be able to review verdicts at all. Contrary to

Diamond's contention, *Korean Air Lines* did not bar reliance on hypothetical possibilities; it simply concluded that particular hypothetical possibilities were not ones on which reasonable jurors could rely. *See* 779 P.2d at 339.

■ Here, reasonable jurors could have disagreed as to whether Wagstaff's negligence caused Diamond's delay in filing suit. Wagstaff presented evidence that Diamond knew and understood the statute of limitations. For example, the jury could have relied on Wagstaff's testimony that he advised Diamond concerning the applicable statute of limitations during his initial meeting with him, and that Diamond was knowledgeable enough about the law to understand its meaning. In addition, the jury could have relied on Diamond's February 1985 letter to Croft, in which Diamond expressed concern over the amount of time remaining to sue, as an indication that Diamond knew about the statute of limitations for third-party claims.

As Wagstaff correctly notes, given the evidence presented, a reasonable jury could have found negligence but not causation. The jury could have found that Wagstaff negligently omitted discussion of the statute of limitations in his May 1985 letter, but that Diamond was aware that any third-party claim was subject to the statute of limitations, and that Diamond nonetheless neither filed suit nor sought further advice. This theory is particularly plausible given that Diamond's only evidence pertaining to causation is his own testimony that as a result of Wagstaff's May 1985 letter, he did not file a claim. The jury reasonably could have accorded more weight to Wagstaff's evidence challenging the credibility of such testimony.

Therefore, the superior court properly denied Diamond a judgment n.o.v. In addition, evidence that Diamond knew of the applicable statute of limitations was sufficient for the superior court to deny Diamond a new trial on the issue of causation.[2]

---

2. Before trial, Wagstaff filed several motions in limine. Two sought a ruling that would require Diamond to prove his "case within a case," by showing that he had a viable claim against Alyeska, before he could recover for Wagstaff's alleged malpractice. The third sought preclusion of any evidence that Diamond might present regarding the theoretical "settlement value" of a potential claim against Alyeska. The superior court granted these motions. On appeal, Diamond contends that the superior court erred in granting Wagstaff's motions in limine. Our disposition of this

### IV. CONCLUSION

Genuine issues of fact existed as to whether Diamond knew about the statute of limitations applicable to his third-party claim. Therefore, the superior court properly denied Diamond's motion for partial summary judgment. In addition, the jury had sufficient evidence to reasonably return a special verdict finding that Wagstaff was negligent but that his negligence was not a legal cause of Diamond's failure to file a timely third-party claim against Alyeska. Accordingly, the superior court did not err in declining to grant Diamond a judgment n.o.v. or a new trial.

AFFIRMED.

case makes discussion of these arguments unnecessary.