**ALASKA DEMOCRATIC PARTY and
Greg Wakefield, Appellants,**

v.

**Kathleen RICE, Appellee.**

No. S–6638.

Supreme Court of Alaska.

April 4, 1997.

Joe P. Josephson, Anchorage, for Appellant Alaska Democratic Party.

Paul Stockler, Anchorage, for Appellant Greg Wakefield.

Thomas A. Ballantine, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

. Kathleen Rice (Rice) contended that Greg Wakefield, in his capacity as chair-elect of the Alaska Democratic Party (Party), offered her a two-year position as executive director of the Party. When the job failed to materialize, Rice sued on the alleged oral contract. She was awarded damages after a jury trial. The Party and Wakefield now appeal. We affirm.

### II. FACTS AND PROCEEDINGS

Rice worked for the Party in one capacity or another from approximately 1987 to 1991. In 1991, she was fired from her position as executive director by Rhonda Roberts, the then current chair of the Party. In 1991, Rice began working for the Maryland Democratic Party. While she was in Maryland, Greg Wakefield contacted her regarding his potential candidacy for the Party chair and the possibility of Rice serving as his executive director.

In May 1992, Wakefield was in fact elected to chair the Party. His term was set to begin the following February. Rice claims that sometime during the summer after Wakefield had been elected, he "confirmed his decision" to hire her as executive director on the following specific terms: "$36,000.00 a year for at least two years and an additional two years if ... Wakefield is re-elected; and approximately $4,000.00 a year in fringe benefits."

In August 1992, Nathan Landau, the chair of the Maryland Democratic Party, resigned and asked Rice to come work for him in his new capacity as co-finance chair of the Gore vice-presidential campaign. She accepted this offer. Rice asserts that later, in either September or October, she accepted Wakefield's offer to work for the Party in Alaska. In November, Rice moved to Alaska, resigning her position with Landau, which she claims "could have continued indefinitely ... at a pay scale the same as that offered by Wakefield." No written contract was entered into between Rice and Wakefield or between Rice and the Party.

In a closed-door meeting on February 5, 1993, the executive committee of the Party advised Wakefield that he could not hire Rice as executive director. Rice alleges that even after this meeting, Wakefield continued to assure her that she had the job. However, on February 15, Wakefield informed her that she could not have the job. Rice filed suit.

On cross-motions for summary judgment, the superior court dismissed all counts except those based on the theories of promissory estoppel and misrepresentation. After a trial by jury, Rice was awarded $28,864 in damages on her promissory estoppel claim and $1,558 in damages on her misrepresentation claim. The superior court denied the Party's and Wakefield's motions for directed verdicts and judgment N.O.V. This appeal followed.

### III. DISCUSSION

A. *The Superior Court Did Not Err in Denying the Party's Motion for Summary Judgment on Rice's Promissory*

### Estoppel Claim.[1]

■ The question of whether the doctrine of promissory estoppel can be invoked to enforce an oral contract that falls within the Statute of Frauds presents a question of first impression. In order to resolve this question, the policy concerns behind both the Statute of Frauds and the doctrine of promissory estoppel must be examined. The purpose of the Statute of Frauds is to prevent fraud by requiring that certain categories of contracts be reduced to writing. However, "it is not intended as an escape route for persons seeking to avoid obligations undertaken by or imposed upon them." *Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 730 P.2d 464, 465 (1986), *overruled on other grounds by Strata Prod. Co. v. Mercury Exploration Co.,* 121 N.M. 622, 916 P.2d 822 (1996).

■ In its ruling on cross summary judgment motions in this case, the superior court addressed some of the conflicting case law on this question and ultimately concluded that as between the Statute of Frauds and promissory estoppel, the latter would prevail. It based this conclusion, in large part, on section 139 of the *Restatement (Second) of Contracts* which provides that

[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable *notwithstanding the Statute of Frauds* if in-

justice can be avoided only by enforcement of the promise....

*Restatement (Second) of Contracts* § 139 (1981) (emphasis added). Section 139(2) then goes on to enumerate factors to consider in making the determination of "whether injustice can be avoided only by enforcement of the promise." *Id.*

In reaching its decision on this issue, the superior court reasoned:

The Restatement test referenced herein provides an appropriate balance between the competing considerations supporting strict enforcement of the Statute, on the one hand, and prevention of a miscarriage of justice, on the other. Plaintiff's burden in overriding the Statute *is to establish the promise's existence by clear and convincing evidence.* This heightened burden, along with the other criteria imposed by Section 139, insure that the polices which gave rise to the Statute of Frauds will not, in fact, be nullified by application of the Restatement exception.

(Emphasis added.) Commentators have noted that "there is no question that many courts are now prepared to use promissory estoppel to overcome the requirements of the statute of frauds." 2 Arthur L. Corbin, *Corbin on Contracts* § 281A (1950 & Supp.1996). We join those states which endorse the Restatement approach in employment disputes such as this one.[2]

■ Concerning the applicability of section 139,[3] the requisites for a claim must be

---

1. This is a pure question of law which this court reviews *de novo. Langdon v. Champion,* 745 P.2d 1371 (Alaska 1987).

2. *See McIntosh v. Murphy,* 52 Haw. 29, 469 P.2d 177 (1970); *Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 730 P.2d 464 (1986), *overruled by Strata Prod. Co. v. Mercury Exploration Co.,* 121 N.M. 622, 916 P.2d 822, 828 (1996) (recasting elements of promissory estoppel), and *Glasscock v. Wilson Constructors, Inc.,* 627 F.2d 1065 (10th Cir.1980).

 Numerous decisions have rejected the Restatement approach both implicitly and explicitly. *See, e.g., Venable v. Hickerson, Phelps, Kirtley & Assoc., Inc.,* 903 S.W.2d 659 (Mo.App.1995), *Greaves v. Medical Imaging Sys., Inc.,* 124 Wash.2d 389, 879 P.2d 276 (1994), *Collins v. Allied Pharmacy Management, Inc.,* 871 S.W.2d 929 (Tex.App.1994), *Dickens v. Quincy College Corp.,* 245 Ill.App.3d 1055, 185 Ill.Dec. 822, 615

N.E.2d 381 (1993), *Stearns v. Emery–Waterhouse Co.,* 596 A.2d 72 (Me.1991), *Sales Serv., Inc. v. Daewoo Int'l (America) Corp.,* 770 S.W.2d 453 (Mo.App.1989), *Whiteco Indus., Inc. v. Kopani,* 514 N.E.2d 840 (Ind.App.1987), *Cunnison v. Richardson Greenshields Securities, Inc.,* 107 A.D.2d 50, 485 N.Y.S.2d 272 (N.Y.App.Div.1985), *Moran v. NAV Servs.,* 189 Ga.App. 825, 377 S.E.2d 909 (1989), *Munoz v. Kaiser Steel Corp.,* 156 Cal.App.3d 965, 203 Cal.Rptr. 345 (1984).

3. In reviewing a jury's determination, this court views the evidence in the light most favorable to the judgment. It does not "weigh the evidence or judge the credibility of the witnesses," but instead, "determine[s] whether there is room for diversity of opinion among reasonable people. If so, the question is one for the jury." *Levar v. Elkins,* 604 P.2d 602, 604 (Alaska 1980).

 In denying the Party's and Wakefield's motions for judgment N.O.V., the superior court stated in part:

met, as the jury reasonably found they were here. The Party and Wakefield reasonably could have expected to induce Rice's action by their promise. Rice did in fact resign from her job, move from Maryland, and lose money as a result of her reliance on the Party and Wakefield, which amounted to a substantial worsening of her position. In addition, her reliance on the oral representations was reasonable.

■ Nonetheless, the promise is only enforceable where injustice can only be avoided by enforcement of the promise. The following circumstances are relevant to this inquiry:

a) the availability and adequacy of other remedies, particularly cancellation and restitution;

b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, *or the making and terms are otherwise established by clear and convincing evidence;*

> Rice, however, testified that Caroline Covington had told her that the Chair makes the decision regarding employment of executive directors. Rice claimed Wakefield told her it was his decision who to hire. He allegedly said that if everyone was mad, he and Kathleen would work together through May and then both quit, suggesting again that the decision would be his, notwithstanding opposition. Plaintiff said that when John Pugh was chair, he had communicated that it was within his discretion to fire executive director Bob Speed. And the Party Plan did not give the executive committee authority over such hiring decisions. This was sufficient evidence for the jury to decide that Rice relied on Wakefield's implicit promise that the executive committee could not derail his selection for executive or finance director. While the Party focuses on the reasonableness of Rice's reliance, that is only one factor for the jury to evaluate in deciding whether injustice could be avoided only by enforcing the contract.
>
> Our review of the record persuades us that there is ample evidence supporting the superior court's analysis.

4. The Party and Wakefield present further arguments as to why they should prevail on the promissory estoppel claim. They argue first that "[t]here was no substantial change of position,

d) the reasonableness of the action or forbearance;

e) the extent to which the action or forbearance was foreseeable by the promisor.

*Restatement (Second) of Contracts* § 139(2) (emphasis added). In the context of this factual record, the jury could reasonably find that Rice would be a victim of injustice without an award of damages, considering her induced resignation, her move from Maryland, and her loss of money and position.

■ The Statute of Frauds represents a traditional contract principle that is largely formalistic and does not generally concern substantive rights. The extent to which a reliance exception would undermine this principle is minimal and the rights that it would protect are significant. The need to satisfy the clear and convincing proof standard with respect to the subsection 139(2)(c) factor also reassures us that promissory estoppel will not render the statute of frauds superfluous in the employment context. Accordingly, we affirm the superior court's treatment of this issue and adopt section 139 as the law of this jurisdiction.[4]

> no reliance, and no foreseeability of reliance." And second, that " '[t]he interests of justice' do not require enforcement of the alleged 'promise.' "
>
> These arguments were not included in the points on appeal submitted at filing, nor were they presented anywhere in the body of the opening brief; they are only argued in the reply brief. As such, they will not be considered by this court. Alaska Rule of Appellate Procedure 204(e). *See also Swick v. Seward School Bd.,* 379 P.2d 97 (Alaska 1963). The arguments are, in any event, without merit. They involve issues that were appropriately resolved against the Party and Wakefield by the jury.
>
> Wakefield further claims that the terms of the contract cannot be enforced against him personally. Rice, however, argues that "Wakefield has waived this argument by his conduct at trial." Indeed, it does not appear, based upon the record, that he raised this defense until his motion for judgment N.O.V. Further, as the superior court properly held, the entire judgment N.O.V. motion was improper since Wakefield had failed to move for a directed verdict at the close of the evidence. As a result, this court regards the defense as having never been raised at trial and accordingly waived for purposes of appellate review.

B. *The Superior Court Did Not Commit an Error By Not Incorporating the Phrase "Definite and Substantial" into Jury Instruction Number 12.*[5]

 In regard to Rice's section 139 claim, one aspect of Jury Instruction 12 directed the jury to decide whether Rice "took action in reliance upon the promise...." The Party and Wakefield claim that section 139 of the *Restatement (Second) of Contracts* requires more than that "action" be taken; they contend that the action must be of a "definite and substantial" character. As such, they argue that "instruction 12 omitted a crucial component of the section 139 factors."

The Restatement lists "the definite and substantial character of the action or forbearance in relation to the remedy sought" as a significant "circumstance[ ]" to consider when applying the doctrine of promissory estoppel. *Restatement (Second) of Contracts* § 139. The Party and Wakefield are wrong to characterize this language as creating a "requirement[ ]." Further, the "definite and substantial" language was given to the jury in Instruction 13.[6].

When read as a whole, the instructions clearly direct the jury to consider the definite and substantial character of Rice's action before concluding that an injustice could be avoided only by enforcing the promise. As such, the instructions are compatible with the Restatement, and it was not error to omit this modifier from the text of Instruction 12.

5. The question here is essentially whether or not the jury instruction is an accurate statement of the law. This court reviews questions of law *de novo*. *Langdon v. Champion*, 745 P.2d 1371 (Alaska 1987).

6. Instruction 13 reads in full as follows:

 In determining whether injustice can be avoided only by enforcement of a promise, you may consider, among others, the following circumstances:

 (a) the definite and substantial character of the plaintiff's action in relation to the remedy sought;

 (b) the extent to which plaintiff's action corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

 (c) the reasonableness of plaintiff's action;

C. *The Evidentiary Record Supports the Jury's Verdict*

1. *Agency*

The Party argues that Wakefield, as chair-elect, had neither implied nor apparent authority to contract on behalf of the party. Consequently, they conclude that "the Party is not vicariously liable to Rice under the law of agency." The jury, after being properly instructed on the law of agency, apparently concluded that Wakefield was acting as an agent for the Party when he allegedly offered Rice the job.

 The superior court declined to reverse the jury's implied determination of this issue. In denying the Party's motion for a judgment N.O.V. on this issue, the superior court concluded that it would have been reasonable for the jury to find that Wakefield had implied authority, apparent authority, or both. In this respect, the superior court observed that "[t]he Party elected Greg Wakefield as its new Chair. In so doing, the Party arguably cloaked Wakefield with apparent authority to conduct business on behalf of his incoming administration." The superior court also concluded, after discussing the Party Plan and comments allegedly made by Party officials, that the "evidence provides a sufficient basis for a finding of the Chair's implied general authority to make hiring decisions regarding executive personnel."[7]

 (d) the extent to which plaintiff's action was foreseeable by the promisor.

7. In regard to these issues the superior court correctly reasoned:

 Plaintiff relied on the fact that the Party Plan did not indicate any intent to endow the executive committee with authority to override the Chair. As noted previously, moreover, Rice testified to comments purportedly made by Caroline Covington and John Pugh which suggested an intention on the part of Party officials to vest complete discretion over hiring decisions in the Chair. Additionally, John Alexander, an executive committee member at the time Wakefield offered Rice the position, testified that he understood Wakefield to have the unfettered authority to hire a finance director.

 This evidence provides a sufficient basis for a finding of the Chair's implied general author-

In addition to its more general complaints on this topic, the Party specifically claims that "even if Wakefield, as chair-elect, had the implied or apparent authority to hire someone, he lacked the authority to hire Rice at all, and most especially for a set term employment contract of two or more years, as opposed to an employment contract at will." The superior court properly refuted both branches of this argument. In response to the first branch, the superior court concluded that "[b]ecause the evidence supported a finding of general authority, there was no need to adduce evidence of a specific intention to authorize Rice's hiring in particular." With respect to whether Wakefield had the authority to hire someone for a term of years, the superior court held that since the question had not been raised at trial or on motion for directed verdict, it was accordingly waived.[8]

The question of whether Wakefield had implied or apparent authority to retain an executive director during the term of his chairmanship was properly submitted to the jury for resolution.[9]

### 2. *Misrepresentation*

The Party and Wakefield do not, in this appeal, dispute the fact that the jury instructions covering Rice's misrepresentation claim accurately set forth the correct legal standards. The only legal contention that they raise with this claim is that since at the time that the alleged representations were made "Wakefield was a volunteer, not speaking in his business or professional capacity," his representations cannot provide a basis for recovery. This argument is derived from the text of subsection 552(1) of the *Restatement (Second) of Torts* (1977). That section would allow recovery against "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information...." *Id.*

The Party and Wakefield argue that this language constitutes a "prerequisite for

ity to make hiring decisions regarding executive personnel. Because the evidence supported a finding of general authority, there was no need to adduce evidence of a specific intention to authorize Rice's hiring in particular. Similarly, if an installed Chair could make a binding job offer, the jury could reasonably find that the Party contemplated that a Chair-elect could do the same, so long as the employment was not to be effective prior to the time that the Chair actually assumed the office.

The jury was also instructed that the party could be found vicariously liable based on apparent authority. Apparent authority entails conduct of the principal by which third parties are given reason to believe that the agent is authorized to act on the principal's behalf. 3 Am.Jur.2d *Agency* sec. 78. "Unless the evidence allows but one inference, the question of apparent authority is one of fact for the jury." *Jackson v. Power,* 743 P.2d 1376 (Alaska 1987); *City of Delta Junction v. Mack Trucks, Inc.,* 670 P.2d 1128 (Alaska 1983).

The Party elected Greg Wakefield as its new Chair. In so doing, the Party arguably cloaked Wakefield with apparent authority to conduct business on behalf of his incoming administration. Wakefield was allowed to speak for the Party in certain respects. He did radio commentary as the Party's spokesman at the November general election. He organized fund raisers. And he travelled to various meetings in his capacity as Chair-elect.

Wakefield's actions, moreover, corresponded to those of Rhonda Roberts, when she was Chair-elect. Rice testified that during Roberts' pre-installation phase, she (Roberts) called the Party office on occasion requesting assistance. Rice responded to these requests. As discussed previously, the Party also promulgated its Party Plan, which placed no limitations on the Chair (or Chair-elect)'s prerogative to make employment decisions. Thus, there was an historical context within which Rice could have construed the Party's position on Wakefield's hiring authority. There was sufficient evidence for the jury to find that Rice understood from Party conduct that Wakefield was authorized to hire personnel for the finance director position.

8. The Party now contends that it did, in fact, raise this question when moving for directed verdict. In support of this proposition, it offers only the following transcript excerpt:

> We don't think there's a showing of an implied or apparent agency at all in the—on this record. So, we would ask for directed verdict for [the previously listed] reasons.

This is not adequate. The Party apparently never mentioned anything about the term of employment as it related to agency. As such, the argument has been effectively waived.

9. "Unless the evidence allows but one inference, the question of apparent authority is one of fact for the jury." *Jackson v. Power,* 743 P.2d 1376, 1382 (Alaska 1987) (citations omitted).

claiming negligent misrepresentation." However, the comment to Subsection 552(1) explains that it is designed primarily to distinguish cases where "the information is given purely gratuitously. . . ." That is not this case. Wakefield had a significant stake in Rice's acceptance of his alleged offer; he apparently wanted her to serve as his executive director. Despite the fact that his term had not yet commenced when the representations were made, they were clearly made in the course of the business of running a political party. As such, even if the *Restatement (Second) of Torts* does create a prerequisite, that prerequisite was functionally met in this case.

■■■ The remainder of the Party's and Wakefield's arguments under this heading essentially amount to claims that the jury's verdict is not compatible with the evidence that was introduced at trial.[10] First, they claim that "there was insufficient evidence of reasonable and justifiable reliance by Rice." Since Wakefield was chairman-elect of the Party, and since, according to Rice's testimony, he offered her a job on certain and specific terms, the jury was well within the bounds of reason to conclude that her reliance was justifiable and reasonable under the circumstances.

The Party's only other claim is that the requirements of section 161 of the *Restatement (Second) of Contracts* were not met by the evidence. Even assuming that section 161 has application to this claim, which is founded primarily in tort, a reasonable jury could have found that its requirements were met. More specifically, the jury could have concluded, based upon the evidence in this case, that Wakefield knew "that disclosure of the [executive committee's veto power was] necessary to prevent some previous assertion

from being fraudulent or material." *Restatement (Second) of Contracts* § 161(a) (1981).

The comment to section 161 states that "one is expected to disclose . . . such facts as he . . . has reason to know will influence the other in determining his course of action." *Id.* Since Wakefield could certainly be expected to know that disclosure of the fact that he did not actually have the authority to offer Rice a job would influence her actions, the facts alleged here satisfy section 161.

Both legal and factual support for the jury's verdict on the misrepresentation claim are found in this record. The Party's and Wakefield's arguments to the contrary are without merit.

D. *The Damage Amount Was Not Excessive in Light of the Evidence.*

1. *Section 139 claim*

■■ According to the special verdict form, Rice was awarded $28,864.00 in damages for lost earnings and benefits on her section 139 claim. The salary that Rice claims to have been offered was $36,000.00 per year plus $4,200.00 in employee benefits. The Party and Wakefield do not seem to dispute the fact that the $28,864.00 amount is a fair measure of Rice's lost wages based upon the salary figures she alleges. The gist of their argument on the promissory estoppel claim is rather that the full "benefit of the bargain [was] not necessary to avoid injustice."

■■ As discussed in section III.A., *supra*, a proven section 139 claim has the effect of rendering the oral contract, which would have been invalid under the Statute of Frauds, legally enforceable on the terms established by Rice. The superior court correctly instructed the jury as to the proper method of calculating damages.[11]

---

**10.** This court will not disturb a jury's verdict unless the evidence, considered in the light most favorable to the verdict, is so clearly to the contrary that "reasonable persons could not differ in their judgment." *Diamond v. Wagstaff*, 873 P.2d 1286, 1290 (Alaska 1994).

**11.** In regard to the section 139 claim, the superior court instructed the jury in part as follows:
If you decide in favor of the plaintiff, you must then decide how much money, if any, will

fairly compensate her. I will list for you the items of loss claimed by the plaintiff. You may not assume because I list an item of loss or explain how to measure a particular loss that you are required to make an award for that loss. For each item of loss you must decide that it is more likely than not true that:
1. The plaintiff had such a loss or is reasonably probable to have such a loss in the future, and

Further, since this jury was specifically instructed not to find for Rice on this claim unless "[i]njustice can be avoided only be enforcement of the promise," it can be inferred that the jury concluded that the damages award was "necessary to avoid injustice." This question was properly reserved for the jury, and there is nothing unreasonable or outrageous about their award. The Party's and Wakefield's contentions to the contrary are without merit.

### 2. *Misrepresentation*

The special verdict forms indicate that the jury awarded Rice $1,558.00 on her misrepresentation claim. This amount represents what Rice claims to have spent on moving expenses. As a result of this award, the Party and Wakefield complain that "under the judgment, [Rice] gets *both* her travel costs ... and damages calculated with reference to the terms of the promise," giving her more than she would have received even if the alleged contract had been honored.

This argument would have been valid if the superior court had actually awarded this damage item to Rice. It did not. The final judgment order reduced the total award of the jury, which would have been $30,422.00 with the misrepresentation award, to the $28,864.00 amount that represents only lost

wages and benefits.[12] Consequently, we reject the Party and Wakefield's contention that the damage award is excessive on this ground.

### IV. *CONCLUSION*

We AFFIRM the judgment of the superior court.

---

2. The loss was legally caused by the conduct of one or both defendants that forms the basis for your verdict.

If both of these things are more likely than not true, you must then decide how much money will fairly compensate the plaintiff for that item of loss. If you do not conclude that both of these things are more likely than not true for a particular item of loss, you may not make an award for that loss.

As explained in Instruction 12, the items of claimed loss on the promissory estoppel claim are either

1. Lost earnings of $36,000 per year and employment benefits of $4,200 per year for two years, minus earnings actually received and to be received from plaintiff's bill collector's job; or

2. Relocation damages in the amount of $1,558.

The item of claimed loss on the misrepresentation claim is

1. Relocation damages in the amount of $1,558.

To award plaintiff damages, if any, on her claim for lost earnings and benefits, you must

calculate the total amount of earnings and employment benefits that plaintiff would have received during her employment with the Party.

From the amount just calculated you must then subtract:

(a) the amount of salary and the value of any benefits that plaintiff has received or will receive from her bill collecting job during the period in which she expected to be employed by the Party;

(b) the amount of payments, if any, given her by the Party that would not have been made, had she been hired as Finance Director; and

(c) the amount of salary and value of any benefits that plaintiff could have earned in mitigation. Mitigation is described hereafter.

12. In its jury instructions on the misrepresentation claim, the superior court explicitly noted its intention to "make any adjustments that may be necessary to insure that there is no double recovery."