**Paul DRAKE, Appellant,**

v.

**Thomas WICKWIRE, Appellee.**

No. S–2604.

Supreme Court of Alaska.

April 20, 1990.

Rehearing Denied May 10, 1990.

Jonathan H. Link, Fairbanks, for appellant.

Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

( OPINION

Before MATTHEWS, C.J., and BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

This is a malpractice action against an attorney for allegedly inducing his client to break an earnest money sales agreement. The underlying facts are set forth in *Drake v. Hosley,* 713 P.2d 1203 (Alaska 1986). We excerpt them at this point:

On March 5, 1984, Paul Drake signed an exclusive listing agreement with The Charles Hosley Company, Realtors (hereafter "Hosley"). The agreement authorized Hosley to act as Drake's agent until March 30, 1984, to sell some land Drake owned in North Pole, Alaska. The agreement provided for payment of a ten percent commission if, during the period of the listing agreement, 1) Hosley located a buyer "willing and able to purchase at the terms set by the seller," or 2) the seller entered into a "binding sale" during the term set by the seller.

Hosley found a group of three buyers, Robert Goldsmith, Dwayne Hofschulte and David Nystrom (hereafter "buyers"), who were interested in the property. On March 23, 1984, Drake signed a purchase and sale agreement, entitled "earnest money receipt," in which he agreed to sell the land to the buyers at a specified price and terms. The buyers also signed the agreement. It provided that closing would occur "within 10 days of clear title" and "ASAP, 1984." A typed addendum stated that Drake agreed to pay Hosley a commission of ten percent of the price paid for the property. Both Drake and Hosley signed the addendum.

On April 3, 1984, Hosley received a preliminary commitment for title insurance. The title report listed a judgment in favor of Drake's ex-wife as the sole encumbrance on the title. The next day Hosley called Drake's attorney, Tom Wickwire, to ask about the judgment. Wickwire stated that the judgment would be paid with the cash received at closing.

Two or three days later, attorney Wickwire called Hosley and stated that his client (Drake) wanted the sale closed by April 11. Wickwire explained that he had negotiated a discounted settlement with Drake's ex-wife that required pay-

ment by April 11. Wickwire claims that Hosley agreed to close by April 11. Hosley disagrees, and claims he merely stated that he would try to close as quickly as possible.

When Hosley became concerned that the buyers would not be able to close on April 11, he telephoned the attorney for Drake's ex-wife and learned that the April 11 deadline for payment of the judgment had been extended to the end of the month.

On April 11, Wickwire called Hosley to set up the closing. Hosley told Wickwire that the buyers could not close that day because they did not have the money and would not have it before May 1. Wickwire indicated that he would advise Drake to call off the sale because the buyers had refused to perform. Wickwire mailed a letter to Hosley, dated April 11, stating that Drake's offer to sell was withdrawn. Hosley received the letter on approximately April 18. On April 12, Drake sold his property through another broker to different buyers.

On April 12, Hosley went to Wickwire's office to close the sale and submitted checks from the buyers totalling $33,000 for the down payment. Wickwire refused the checks, stating that another buyer already had purchased the property.

*Id.* at 1204–05 (footnote omitted).

In *Drake*, Hosley sued Drake for his real estate commission. The trial court granted summary judgment to Hosley. On appeal we affirmed, holding that Hosley was Drake's agent, not the agent of the buyers and thus would have had no authority to change the deadline for closing from April 12 or 13 to April 11 as Drake contended. We concluded:

Hosley found a group of buyers who were willing and able to perform in accord with the terms set by the seller, but they were prevented from doing so by the seller's frustrating conduct. The buyers tried to perform by tendering checks for the down payment "within 10 days of clear title," as required by the

earnest money agreement. The sale did not take place because the seller, Drake, sold the property to a third party during the ten-day closing period.

*Id.* at 1208.

In the present action, Drake alleges that Wickwire was negligent in advising him that he could sell his property to another buyer on April 11. Wickwire moved for summary judgment. Wickwire contended that he believed that there had been an anticipatory breach of the earnest money agreement when Hosley told him the buyer would not have the money until May 1 and that his conduct "did not fall below an acceptable standard of care." He supported this contention with the affidavits of two attorneys. Drake filed a memorandum in opposition to the motion for summary judgment but did not submit testimony or affidavits from attorneys opining that Wickwire had been negligent.

The trial court granted Wickwire's motion in a written decision which adopted a rule requiring expert evidence to establish a breach of an attorney's duty of care, except in non-technical situations where negligence is evident to lay people or where the fault is so clear as to constitute negligence as a matter of law. After adopting this rule the court applied it to the facts of this case, finding that Wickwire's negligence, if any, was not so obvious that it could be determined as a matter of law, nor was the subject matter non-technical so that negligence might be evident to lay people. The court therefore concluded that expert testimony from Drake was required. Since none was presented by Drake, summary judgment was granted.

The court stated:

Defendant contends that expert testimony is required. He notes that the case involves issues of anticipatory repudiation of a contract, earnest money agreements, real estate brokers, and closing dates in the context of a $330,000 raw land sale transaction. Plaintiff alleges that the defendant's breach of duty was so obvious that expert testimony is not required. Plaintiff portrays the issues as simple mathematics (adding 10 days to

April 2 or 3), and not selling land to a party after you have promised to sell to another party. Plaintiff also argues that the issue of anticipatory repudiation has already been decided by the Alaska Supreme Court in *Drake v. Hosley,* 713 P.2d 1203 (Alaska 1986). The court concludes that the alleged breach, or lack thereof, is not so obvious that it may be determined as a matter of law nor is it within the ordinary knowledge of laypersons. Thus, expert testimony is required. Anticipatory repudiation is an issue in this case; the Supreme Court's decision in *Drake v. Hosley* is not dispositive. The issue in this case is not whether the anticipatory repudiation did or did not occur, but whether a reasonable attorney under the existing circumstances could reasonably have made such a determination. There is also a complex agency issue involving the conduct of the real estate broker. Neither issue is within the ordinary knowledge of laypersons.

On appeal, Drake does not take issue with the rule of law adopted by the court. Instead, he argues that this case involves obvious breaches of duty on the part of Wickwire and, in addition, urges us to "find negligence as a matter of law as [we] did in *Drake v. Hosley.*" Concerning the latter case, Drake argues:

This court (in *Drake v. Hosley, supra*) has already determined that there is no material issue of fact and that reasonable minds cannot differ with respect to the question of whether an anticipatory breach took place. It did not. These findings were made against a layperson (Drake), relying on an attorney's advice, after repeated urging that a question of fact existed in that reasonable minds could differ. *A fortiori,* the same ruling must apply to Wickwire where the standard is obviously higher.

In response, Wickwire argues issues going to anticipatory repudiation:

The judgment exercised by Wickwire was not a matter of counting, but (1)

whether Hosley had apparent authority to deliver word from the buyers regarding the sale and (2) whether Wickwire could reasonably rely on the admission of Hofschulte, as conveyed by Hosley, that the buyers could not perform until May 1.

We agree with the rule of law adopted by the superior court in this case. It is supported by *Kendall v. State, Division of Corrections,* 692 P.2d 953, 955 (Alaska 1984) where we announced a similar rule applicable in medical malpractice actions. Several authorities in other jurisdictions have applied the same rule in legal malpractice cases. *See Kirsch v. Duryea,* 21 Cal.3d 303, 146 Cal.Rptr. 218, 578 P.2d 935 (1978); *Childers v. Spinder,* 91 Or.App. 119, 754 P.2d 599 (1988). *See also* Annotation, *Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney,* 14 ALR 4th 170, 173 (1982).

However, we are of the view that Wickwire was negligent as a matter of law. In Drake's brief, authored by Wickwire, in the case of *Drake v. Hosley,* the critical conversation between Hosley and Wickwire relating to the alleged anticipatory repudiation is set forth as follows:

[O]n the morning of April 11 [Wickwire] called Hosley to select a specific time and place for closing. But Hosley's response was that his buyers could not close on that day as they did not have the money but would need until May 1 to get it. Wickwire asked Hosley if the problem was just getting the time to get the money out of the bank or did they not have the downpayment. Hosley replied that the buyers in fact had the money but were "resisting the pressure to close." [1]

The law of anticipatory repudiation is set forth in sections 253, 250 and 251 of the *Restatement (Second) of Contracts (1981)*

---

**1.** We take judicial notice of this brief. *Nicholson v. Sorensen,* 517 P.2d 766, 772 (Alaska 1973) (court "could properly take judicial notice of the contents of the pleadings filed [in another case.]"); *cf. Commercial Fisheries Entry Com'n v. Apokedak,* 606 P.2d 1255, 1259, n. 11 (Alaska 1980) (judicial notice taken of an unreported decision).

(hereafter *Restatement*). Section 253(1) of the *Restatement* provides:

> Where an obligor repudiates a duty before he has committed a breach by nonperformance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach.

The concept of repudiation is explained in § 250 as follows: "A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages...."

The commentary to this section explains that a statement, in order to qualify as a repudiation, must be reasonably clear:

> In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. Mere expression of doubt as to his willingness or ability to perform is not enough to constitute a repudiation, although such an expression may given an obligee reasonable grounds to believe that the obligor will commit a serious breach and may ultimately result in a repudiation under the rule stated in § 251. However, language that under a fair reading "amounts to a statement of intention not to perform except on conditions which go beyond the contract" constitutes a repudiation.

*Restatement* § 250, comment b (citation omitted).

In our view, Wickwire did not act reasonably in treating Hosley's statement as a repudiation. As recited by Wickwire, it was ambiguous on its face. Hosley first indicated that the buyers would need until May 1 to get the money. Later, though, Hosley indicated that the buyers had the money but were "resisting the pressure to close." The latter statement itself is ambiguous in that it is unclear whether the buyers were resisting the pressure to close on April 11 as Drake desired, or on April 12 or 13 as the contract required.

If the former meaning was intended, there would have been no anticipatory repudiation because the buyers had no contractual obligation to close on the 11th. If the latter meaning was intended, Wickwire would have had at most reasonable grounds to believe that the buyers would breach the contract. Neither meaning justifies treating the statement as a repudiation. Instead, Wickwire could have sought assurances of performance under the rule stated in § 251 of the Restatement. That rule states:

> (1) Where reasonable grounds arise to believe that the obligor will commit a breach by nonperformance that would of itself give the obligee a claim for damages for total breach ... the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.
>
> (2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case.

Wickwire's negligence in this case was in advising precipitate conduct in the face of an ambiguous statement which was insufficient to indicate that the buyers would breach the contract.

The judgment is REVERSED and this case is REMANDED for further proceedings consistent with this decision.

RABINOWITZ, J., dissents.

RABINOWITZ, Justice, dissenting.

I dissent from the court's holding that Wickwire was, as a matter of law, guilty of malpractice.[1]

---

1. The focus of my dissent is limited to this holding. I do agree with the court's acceptance of the rule adopted by the superior court "requiring expert evidence to establish a breach of an attorney's duty of care, except in non-technical situations where negligence is evident to lay people or where the fault is so clear as to constitute negligence as a matter of law."

## I. IS THERE AN UNDISPUTED FACTUAL BASIS FOR CONCLUDING THAT WICKWIRE WAS NEGLIGENT AS A MATTER OF LAW?

Assuming the propriety of this court taking judicial notice of material not presented to the superior court, in my view genuine issues of material fact preclude our summary disposition and necessitate a remand.[2] In my opinion the factual content of the critical conversation between Hosley and Wickwire relating to the former's alleged anticipatory repudiation cannot be established with the degree of certainty necessary for summary disposition by our consideration of Wickwire's brief in *Drake v. Hosley*.[3]

In *Drake v. Hosley*, 713 P.2d 1203, 1205 (Alaska 1986), this court stated the relevant facts of the Hosley–Wickwire conversation as follows:

> On April 11, Wickwire called Hosley to set up the closing. Hosley told Wickwire that the buyers could not close that day because they did not have the money and would not have it until May 1.

In its Memorandum Decision and Order granting Wickwire's summary judgment motion, the superior court further found that

**2.** The court holds that Wickwire was negligent as a matter of law, and in so holding reverses the superior court's grant of summary judgment in Wickwire's favor. Thus, the court's position is that there is no genuine issue of material fact concerning the question of Wickwire's negligence. *See Drake v. Hosley*, 713 P.2d 1203, 1205 (Alaska 1986) (In reviewing the grant of a motion for summary judgment we are bound to take that view of the facts which most favors the non-movant in determining whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.).

Although I agree that summary judgment was improperly granted to Wickwire (because the content of the crucial conversation has not been established), in my view this very factual uncertainty precludes holding Wickwire negligent as a matter of law. The factual content of the critical conversation has not been established. Taking the view of the facts most favorable to Wickwire leads me to conclude that summary disposition of the question of Wickwire's negligence is inappropriate.

Wickwire indicated to Hosley that he viewed these statements as an anticipatory repudiation of the agreement and that he would advise Drake to sell the property to the other interested buyers.[4]

Given the foregoing I cannot agree with the court's summary disposition of the issue of Wickwire's alleged malpractice. Assuming this court can take judicial notice of the facts of the Wickwire-authored brief in *Drake v. Hosley*, I am nevertheless of the view that what was said at the Hosley–Wickwire conversation must be determined by the superior court after a hearing.

## II. ASSUMING THE FACTS OF THE CONVERSATION WERE UNDISPUTED, WAS WICKWIRE NEGLIGENT AS A MATTER OF LAW?

Assuming, *arguendo*, that the description of the Hosley–Wickwire conversation set forth in Wickwire's brief in *Drake v. Hosley* is controlling, I nonetheless cannot agree with the court's holding that "Wickwire's negligence in this case was in advising precipitate conduct in the face of an ambiguous statement which was insufficient to indicate that the buyers would breach the contract."

**3.** In his brief in *Drake v. Hosley*, Wickwire's rendition of his conversation with Hosley was as follows:

> [O]n the morning of April 11 [Wickwire] called Hosley to select a specific time and place for closing. But Hosley's response was that his buyers could not close on that day as they did not have the money but would need until May 1, to get it. Wickwire asked Hosley if the problem was just getting the time to get the money out of the bank or did they not have the downpayment. Hosley replied that the buyers in fact had the money but were "resisting the pressure to close."

**4.** Wickwire filed an affidavit in the superior court in which he averred in part that:

> On or about April 11, 1984, I called Hosley concerning the time for closing on that particular date. At that point, he told me that the buyers could not close on the 11th because they did not have the money for the down payment, i.e., $33,000, and would not have it until May 1, 1984 ... at that time, I also told Hosley that I was going to tell Drake that the buyers were unable to perform and he would be free to sell to other interested buyers.

### A. Did An Anticipatory Repudiation Occur?

In my view, Hosley's representation that his buyers "did not have the money but would need until May 1, to get it" constituted an unambiguous expression of intent not to comply with the terms of the contract. No more is required for an anticipatory repudiation to have occurred. The established common law rule is that when a statement amounts to an expression of intention not to perform except on conditions which go beyond the terms of the contract, repudiation occurs. *See, e.g., Neal–Cooper Grain Co. v. Texas Gulf Sulphur*, 508 F.2d 283 (7th Cir.1974) (construing Uniform Commercial Code). In the context of the instant case, I believe Hosley's language was "sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform." *Restatement (Second) of Contracts (1981)*, § 250 Comment b (1981). I am persuaded that on the basis of this record a trier of fact could find that a reasonable seller would be justified in believing that the buyer intended to breach, and that the normal remedies for anticipatory repudiation should therefore accrue.

Furthermore, in my opinion Hosley's reply to Wickwire's request for assurances did not work a retraction of the anticipatory repudiation precisely because it was, as the court notes, equivocal. *Cf.* U.C.C. § 2–611; AS 45.02.611(b) (requiring a clear retraction of anticipatory repudiation).[5] The fact that Hosley's second statement was ambiguous, although it prevented a retraction of the prior repudiation from occurring, should not be construed to have rendered the original repudiation itself equivocal.

Accordingly, I dissent.

5. After Hosley said his clients were not ready with the money, Wickwire asked Hosley if the problem was just getting the time to get the money out of the bank or did they not have the down payment. In so inquiring, Wickwire clearly sought further assurances that the contract would be performed. Moreover, having sought assurance that the contract would be honored, Wickwire received none. To Wickwire's inquiry about the source of the problems with the money, we are told, "Hosley replied that the buyers in fact had the money but were 'resisting the pressure to close.'"