Mark GERBER II, Appellant,

v.

**JUNEAU BARTLETT MEMORIAL HOSPITAL, Appellee.**

No. S–8964.

Supreme Court of Alaska.

May 19, 2000.

Gary Foster, Law Office of Gary Foster, Fairbanks, for Appellant.·

Michael L. Lessmeier, Lessmeier & Winters, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Mark Gerber brought a medical malpractice claim against Juneau Bartlett Memorial Hospital for injuries to his sciatic nerve allegedly resulting from an improper injection. Without interviewing Gerber, an expert advisory panel determined that Gerber had received proper care. Relying upon the panel's uncontradicted findings, the superior court granted summary judgment. Because the panel was not required to interview Gerber, and because Gerber did not submit any admissible evidence rebutting the panel's finding of proper care, we affirm the superior court's decision granting summary judgment.

## II. FACTS & PROCEEDINGS

On May 2, 1995, Mark Gerber sought treatment for a rash in the emergency room of the Juneau Bartlett Memorial Hospital. A physician examined Gerber and prescribed a Benadryl injection. A nurse then administered the Benadryl injection into Gerber's right buttock. The injection caused injury to the sciatic nerve and resulted in symptoms in Gerber's right leg and foot.

In April 1997 Gerber filed a medical malpractice complaint in superior court against the hospital. An expert advisory panel was requested by the hospital and appointed by the superior court. The parties agreed to stay all activity of the panel until April 20, 1998 so that the parties could collect deposition testimony, medical records, reports of medical consultants, and medical literature. While Gerber presented no such material to the panel, he did request on April 20 that the panel interview him. The panel did not personally interview Gerber.

The panel filed its report with the superior court on June 9. The report concluded that the nurse "appropriately carried out the order given by the physician." The report further stated that unskillful care did not cause the injury: "Documentation indicates the injection was given in the proper anatomical location, right ventrogluteal muscle. The injury is a known potential, although rare, complication of a properly administered injection."

In September the hospital moved for summary judgment. Gerber filed an opposition, arguing that the injection was administered in an improper location.[1] He further contended that he had been unable to "communicate the location of the nurse's injection into his buttock to the expert advisory panel." But Gerber failed to submit any affidavit evidence from himself or medical professionals contesting the conclusions of the expert advisory panel. Instead he argued that the expert advisory panel report was not sufficient to support summary judgment because the panel failed to interview him.

The superior court granted summary judgment in favor of the hospital. The court reasoned that under the applicable rules, "the panel does not have to interview people on request." Gerber appeals.

## III. STANDARD OF REVIEW

This court reviews a decision granting summary judgment de novo.[2] This court

---

**1.** In his opposition to the summary judgment motion, Gerber also took issue with the use by the hospital and the expert advisory panel of the term "ventrogluteal muscle." While the anatomy texts cited by Gerber do not refer to such a muscle, Gerber concedes that this term refers to "the region of the upper, outside of the gluteus or buttock."

**2.** See Chijide v. Maniilaq Ass'n of Kotzebue, 972 P.2d 167, 170 (Alaska 1999).

will affirm a grant of summary judgment if, "construing all reasonable inferences in favor of the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." [3]

■ This court also reviews matters of statutory interpretation de novo.[4] In interpreting a statute, the court's objective is to give effect to the legislative intent with due regard for the meaning that the provision's language conveys to others.[5] Where the statute's meaning appears "clear and unambiguous ... the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent." [6]

## IV. DISCUSSION

### A. The Expert Advisory Panel Need Not Interview a Party Upon Request.

■ Gerber argues that Civil Rule 72.1 and public policy require that the expert advisory panel interview a party upon request. The hospital contends that such interviews are not mandatory but merely optional; the panel has the discretion whether to conduct the requested interview.

Civil Rule 72.1 governs expert advisory panels in medical malpractice actions. Under Civil Rule 72.1(f)(2), "[a]ny party may request the panel to interview any person or party." Gerber argues that this provision requires the panel to interview him. He reasons that this provision renders interviews mandatory because Rule 72.1 does not permit the evidence to be submitted by affidavit.

The text of Rule 72.1 bears no indication that interviews are mandatory upon a party's request. While a party "may request" an interview under Rule 72.1(f)(2), Rule 72.1 imposes no explicit requirement that the panel grant such an interview. This stands in stark contrast to paragraphs (a) and (b) regarding panel appointment. Under these provisions, a party "may request" that the court appoint a panel.[7] If a party requests the appointment, then the court "shall nominate" a panel.[8] Rule 72.1 contains no similar mandatory language with respect to panel interviews.

Alaska Statute 09.55.536 further indicates the optional nature of panel interviews. Under subsection (b)

> [t]he expert advisory panel *may* compel the attendance of witnesses, *interview the parties,* physically examine the injured person if alive, consult with the specialists or learned works they consider appropriate, and compel the production of and examine all relevant hospital, medical, or other records or materials relating to the health care in issue.[9]

In contrast to the term "shall," the term "may" generally denotes permissive or discretionary authority and not a mandatory duty.[10] Thus, the plain language of AS 09.55.536(b) permits but does not require the panel to interview witnesses. Like Civil Rule 72.1, AS 09.55.536 contains no provision that requires the panel to interview a party.

Alaska case law also supports the hospital's position that the panel is not required to interview a party. In *Keyes v. Humana Hospital Alaska, Inc.,*[11] this court determined that AS 09.55.536(b) "does not ... establish a hearing-type procedure by which

---

3. *Id.*

4. *See State, Dep't of Revenue, Child Support Enforcement Div. v. Green,* 983 P.2d 1249, 1252 (Alaska 1999).

5. *See Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995).

6. *Gossman v. Greatland Directional Drilling, Inc.,* 973 P.2d 93, 96 (Alaska 1999) (quoting *University of Alaska v. Tumeo,* 933 P.2d 1147, 1152 (Alaska 1997)).

7. Alaska R. Civ. P. 72.1(a).

8. Alaska R. Civ. P. 72.1(b)(1).

9. AS 09.55.536(b) (emphasis added).

10. *Compare Fowler v. City of Anchorage,* 583 P.2d 817, 820 (Alaska 1978) ("Unless the context otherwise indicates, the use of the word 'shall' denotes a mandatory intent.") *with Rutter v. State,* 963 P.2d 1007, 1008 (Alaska 1998) and *State, Dep't of Transp. & Pub. Facilities v. Sanders,* 944 P.2d 453, 457–58 (Alaska 1997).

11. 750 P.2d 343 (Alaska 1988).

the parties dictate what evidence the panel considers." [12] Therefore, the panel has the discretion to select the evidence it will consider in its evaluation.

■ Due process concerns do not compel a contrary interpretation. In *Keyes,* this court upheld AS 09.55.536 against a procedural due process challenge.[13] While recognizing that the "crux of due process is an opportunity to be heard and the right to adequately represent one's interests," the court determined that procedural safeguards are not required for the panel's evaluation.[14] The court reasoned that the parties are given full opportunity to litigate their positions before the court and likened the panel report to the opinion of a neutral expert.[15] Under this reasoning, Gerber is incorrect in his assertion that interviews must be mandatory to afford parties their "day in court."

Alaska Statute 09.55.536(e) reinforces the procedural safeguards available in court to the parties:

> The report of the panel with any dissenting or concurring opinion is admissible in evidence to the same extent as though its contents were orally testified to by the person or persons preparing it. The court shall delete any portion that would not be admissible because of lack of foundation for opinion testimony, or otherwise. Either party may submit testimony to support or refute the report. The jury shall be instructed in general terms that the report shall be considered and evaluated in the same manner as any other expert testimony. Any member of the panel may be called by any party and may be cross-examined as to the contents of the report or of that member's dissenting or concurring opinion.

Gerber thus had the opportunity to "submit testimony to ... refute the report" in his opposition to the summary judgment motion. As we observed in *Keyes:* "Nothing in the statute precludes the parties from presenting the evidence and arguments concerning the merits of the case that they would have presented in the absence of the pre-trial panel review." [16]

Moreover, Rule 72.1 explicitly permits a party to present evidence to the panel. While Rule 72.1 does not specifically mention affidavits, Rule 72.1(e)(5) appears to contemplate them: "[T]he panel ... shall keep copies of all written statements the panel may receive or take, whether from witnesses, consultants, or other sources." Rule 72.1 explicitly permits parties to submit medical records, medical reports from independent consultants, and medical literature.[17] Furthermore, under Rule 72.1(c)(7), each party must submit to the panel certain initial disclosures required by Rule 26(a)(1), including "the factual basis of each of its claims or defenses." [18]

In sum, we conclude that our prior case law and the statutory and rule provisions clearly indicate the discretionary nature of the expert panel interview, and that due process concerns do not mandate a different result. While we emphasize that interviewing the injured party may often constitute good practice, the decision whether to conduct the interview lies within the sound discretion of the expert advisory panel. Therefore, we affirm the superior court's ruling that the expert advisory panel was not required to interview Gerber.

### B. *The Superior Court Properly Granted Summary Judgment on the Basis of the Expert Advisory Panel Report.*

The superior court determined that, in light of the panel report, there existed no genuine issue of material fact and therefore granted the hospital's motion for summary judgment.

■ Under Alaska law, when the expert advisory panel makes a finding of proper

---

12. *Id.* at 348.

13. *See id.* at 352–55.

14. *Id.* at 353.

15. *See id.*

16. *Id.* at 348.

17. *See* Alaska R. Civ. P. 72.1(c).

18. Alaska R. Civ. P. 26(a)(1)(A).

care and the plaintiff claiming negligence presents no contradictory evidence in response to a summary judgment motion, the health care provider is entitled to judgment as a matter of law. In *Kendall v. State, Division of Corrections*,[19] we confronted a medical malpractice case similar to the present one. The expert advisory panel determined that, Kendall had received proper care.[20] The defendants successfully moved for summary judgment on the basis of the panel's report.[21] On appeal, we concluded that the superior court properly considered the panel report in granting summary judgment.[22] Furthermore, we determined that the panel's conclusion that Kendall received proper care "was sufficient to establish the absence of a genuine issue as to negligence."[23] Because Kendall presented no evidence, such as expert affidavits, to rebut this conclusion, we upheld the grant of summary judgment.[24]

In the present case, the expert advisory panel determined that Gerber received proper care: It concluded that the medical injury was not "caused by unskillful care" and that "the injection was given in the proper anatomical location." Gerber failed to submit in conjunction with his opposition brief an expert affidavit or any other evidence contradicting the panel's conclusion. Thus, under *Kendall*, Gerber has failed to raise a genuine issue of fact as to negligence and the superior court properly granted summary judgment.

## V. *CONCLUSION*

Because the expert advisory panel is not required to interview a party upon request, and because Gerber failed to submit any

---

19. 692 P.2d 953 (Alaska 1984).

20. *See id.* at 954.

21. *See id.* at 955.

22. *See id.*

23. *Id.*

24. *See id. See also McWain v. Tucson Gen. Hosp.*, 137 Ariz. 356, 670 P.2d 1180, 1182–83 (App.1983) (holding that, in case of alleged injury to sciatic nerve caused by injection, plaintiff was

---

evidence of substandard medical care, we AFFIRM the superior court's grant of summary judgment on the basis of the panel report.

required to submit evidence of substandard care in order to survive summary judgment where expert panel found non-negligence); *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga.App. 200, 345 S.E.2d 904, 907–08 (1986) (affirming denial of summary judgment where nonmovant plaintiff submitted own affidavit regarding location of injection and expert affidavit regarding proper locations of intramuscular injections into buttock); *Bialer v. St. Mary's Hosp.*, 83 Nev. 241, 427 P.2d 957, 958–59 (1967) (affirming summary judgment where plaintiff failed to present evidence that defendants deviated from standard of care in administering intramuscular injection into buttock).