Gerald BALL, Albert Newton Ball, and Albert Ball, Jr., Appellants,

v.

BIRCH, HORTON, BITTNER AND CHEROT, a professional corporation, and Hal R. Horton, individually, Appellees.

No. S–10015.

Supreme Court of Alaska.

Sept. 27, 2002.

Rehearing Denied Dec. 10, 2002.

R. Eldridge Hicks, Hicks, Boyd, Chandler & Falconer, Anchorage, for Appellants.

Patrick B. Gilmore, Atkinson, Conway & Gagnon, Anchorage, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

A law firm's clients sued the firm. They claimed, among other things, that the firm was negligent in negotiating a commercial transaction and preparing transactional documents. The law firm moved for complete summary judgment; it submitted in support an expert's report that addressed only the document-preparation claim. When the plaintiffs repeatedly failed to produce expert opinions to oppose the firm's summary judgment motion or support their malpractice claims, the superior court granted the firm complete summary judgment. We discern no error as to the document-preparation claim because plaintiffs did not preserve any genuine factual dispute as to that claim. But as to all claims the firm's expert did not address, we reverse and remand because the firm did not make out a prima facie showing that it was entitled to summary judgment as to those claims.

## II. FACTS AND PROCEEDINGS

### A. The Transaction

Gerald Ball, Albert Newton Ball, and Albert Ball, Jr. (the Balls) sought to sell their cargo airline businesses and began negotiations with a prospective purchaser in early 1991.[1] The purchaser tendered two $200,000

---

1. With respect to the facts of the underlying dispute, we draw permissible factual inferences in favor of the Balls, the opponents of the summary judgment motion. *See Zok v. Collins*, 18

checks but they were returned for insufficient funds. The checks' return and other circumstances raised a question about whether to proceed with the sale or terminate discussions with the would-be buyer. The Balls retained the Anchorage law firm of Birch, Horton, Bittner, and Cherot to continue negotiations with the prospective buyer and to draft documents for the sale of the businesses. Attorney Hal Horton of that firm was the Balls' lead lawyer.

According to their sworn discovery responses they later provided, two of the Balls had doubts about the "deal" and had wanted to end negotiations, but Horton insisted on continuing. After the transactional documents were executed, the purchaser defaulted on the first payment and the Balls foreclosed on what property they could.

## B. The Lawsuit

The Balls filed a malpractice complaint against Horton and the law firm (collectively "Birch, Horton" or the "law firm") in October 1997. The complaint alleged that Birch, Horton "failed to meet the standard of care of the legal profession ... in negotiating the sale [of] the Stock and in drafting the documents for the sale of the Stock in the Corporations." The complaint prayed for damages exceeding $5,000,000.

The attorney who filed the Balls' malpractice lawsuit became incapacitated in the summer of 1999 and all of his cases, including the Balls' lawsuit, were referred to trustee counsel for some months. The original lawyer briefly resumed representing the Balls in early 2000.

Birch, Horton moved for summary judgment in January 2000 and supported its mo-

tion with a May 1999 report prepared by its expert, Fairbanks attorney Charles E. Cole. Birch, Horton served the report on the Balls in May 1999, and again served the report on them with its January 2000 summary judgment motion.[2] We discuss the report in Part III.B. The law firm also filed a separate motion for partial summary judgment on the issue of punitive damages.

The Balls' original litigation lawyer, having resumed representing the Balls in early January 2000, moved to continue the trial and extend the time to oppose summary judgment. He claimed in his supporting memorandum that he had "retained a local attorney to act as the expert in the case," but learned after he returned to Anchorage that this attorney "had discovered a conflict of interest with the defendant law firm" and would no longer serve as an expert.[3] He asked for additional time in which to engage another expert to respond to the law firm's pending summary judgment motions.

The Balls' litigation lawyer then fell ill again; their present litigation attorney replaced him in early May 2000.

It is undisputed that the Balls failed to comply with a number of discovery deadlines after they filed suit. Most important among these were several deadlines for providing expert reports; at least one of those deadlines had passed before the law firm moved for summary judgment in January 2000.

At a June 1, 2000 status conference, the court, the Balls' present counsel, and Birch, Horton's defense attorney agreed that the Balls' counsel's "first priority" would be to secure an expert and obtain an expert report. Birch, Horton's attorney explained that the

P.3d 39, 40 n. 2 (Alaska 2001) (citation omitted); *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000) (citation omitted). These circumstances are described only for the purposes of resolving the legal issues before us. We do not intend to foreclose the parties from fully litigating genuine factual disputes on remand.

**2.** The report was not originally prepared in the form of an affidavit, but the law firm eventually submitted it in sworn form.

**3.** A dispute arose about whether this local attorney had ever been retained as an expert in this

case. He testified at his February 2000 deposition that he had never actually been retained as an expert. The Balls' original attorney filed a declaration asserting that the local attorney had agreed to be an expert in the case. The superior court found, in denying the Balls' motion to reconsider the grant of summary judgment, that this local attorney "had never been engaged as an expert, had never agreed to be an expert, had never agreed to prepare a report, and had never been informed of the deadlines for expert reports."

January 2000 summary judgment motion "was just filed in desperation to get some sort of response to something, and just based on the fact that there have been two deadlines that have come and gone for producing expert reports, and you can't have an attorney malpractice claim without one." The court then vacated the July 24, 2000 trial date.

At a July 13, 2000 status conference, the Balls' present attorney acknowledged the importance of providing an expert report. He represented that he had contacted an expert, a lawyer in a prominent New York law firm, and that the expert needed more time to review the file and prepare a report. The Balls' attorney identified the expert by name and asked for at least another seventy-five days in which to provide the expert's report. The court suggested obtaining in thirty days a "more or less summary report from the expert" about the theory supporting the Balls' case and the Balls' attorney agreed to do so. The court then imposed an August 15 deadline for the report. As of mid-July, at least one trial date had already been vacated and there were seven unanswered defendants' motions, including motions to compel and a motion to disclose damages.

On August 15 the Balls filed their memorandum opposition to Birch, Horton's summary judgment motion, but submitted no report from an expert. The Balls argued that the Cole report did not justify complete summary judgment because it only addressed the document-preparation claim and not their other claims. They also asserted that the claimed negligence was ascertainable by a jury of "ordinary education," obviating the need for a plaintiffs' expert. Alternatively, the Balls claimed that their delay in producing the expert's report had not harmed the law firm and that they needed thirty more days under Alaska Civil Rule 56(f) to secure an expert's report. They contended that the following circumstances justified the additional thirty days: (1) no trial date was then set; (2) the Balls' sworn discovery responses "manifest a prima facie case"; (3) the Balls' lawyer had exerted "a prodigious effort" in the past two and a half months; (4) the Balls' lawyer could "certify

under Rule 11" that the lawsuit was warranted by existing law; (5) diligent efforts to obtain a preliminary expert report by August 15 had failed through no fault of the Balls, their attorney, or the "worthiness" of the case; and (6) the law firm had suffered no prejudice because there was no trial date.

The superior court issued an order on August 22, 2000 setting the trial for April 9, 2001.

In a late August 2000 letter to defense counsel, the Balls' attorney revealed that, as of the July 13, 2000 status conference, he had not in fact spoken with the New York lawyer whom he had identified at the July 13, 2000 status conference as the Balls' expert. The same letter revealed that the Balls' lawyer had received a message from the New York attorney on July 21 stating that he felt his law firm did not have the required expertise. The Balls' lawyer also revealed that he had relied on the representation of the Balls' original lawyer that the New York attorney would serve as an expert, but that current counsel had not contacted the identified expert until after the July 13 conference. Birch, Horton then supplemented its summary judgment motion with arguments asserting that the Balls should not be granted more time, given their failure to produce the identified expert, the misrepresentations of the Balls' counsel, and their lack of diligence.

By order issued September 20, 2000, the superior court granted Birch, Horton's summary judgment motion. The superior court reasoned that an expert opinion was necessary to prove breach of duty in this case, that the Balls had failed to provide one after having been given "ample opportunity" and "extension after extension," and that summary judgment was appropriate because the firm's expert's report was uncontradicted. The order also stated: "The plaintiffs' failure to comply with this court's orders and the defendant's reasonable requests for compliance precipitates summary judgment."

In their reconsideration motion, the Balls again argued that the Cole report was too limited to justify complete summary judgment because it only addressed the document-preparation claims and not the negligent negotiation claims alleged in the Balls'

sworn interrogatory answers. They also claimed that summary judgment was inappropriate because they had now obtained and produced an expert report, because discovery was still open, and because the trial date of April 2001 was then still six months away. It appears that the Balls first served their expert's report on September 28, 2000.

The superior court denied the motion for reconsideration. The denial order set out the limited grounds for reconsideration and held that the Balls failed to allege circumstances justifying reconsideration. The order stated that "Mr. Cole's opinion address[ed] each and every claim of malpractice raised by Plaintiffs in their Disclosures," and that "plaintiffs are using the motion to reconsider to seek yet another extension of time for presentation of 'additional evidence on the merits.'" The court entered final judgment against the Balls and awarded costs and enhanced attorney's fees against them.

The Balls appeal the grant of summary judgment and the award of attorney's fees.

## III. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo.[4] We affirm a grant of summary judgment if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[5] We draw all reasonable inferences in favor of the non-movant.[6]

### B. Partial, but Not Complete, Summary Judgment Was Appropriate.

The Balls argue that the superior court committed two main errors in entering summary judgment against them: first, they claim that it erred by reading the report of the law firm's expert to address all of the

Balls' liability claims rather than just the claim of negligent document preparation, and second, they claim that it abused its discretion by dismissing the entire lawsuit rather than "waiting longer" for their expert's report because trial was "distant" and discovery was still open.

The law firm responds that summary judgment was proper because the Balls had the ultimate burden of proving that the law firm breached the standard of care, but repeatedly failed to produce any expert opinion that the law firm breached that standard. It reasons that because the Balls failed to establish breach of the standard of professional care by expert opinion, an essential element of legal malpractice claims,[7] the law firm would have been entitled to summary judgment even had it not provided its own expert report.

Two competing propositions are at play here. The law firm relies on the first: professional malpractice plaintiffs must support their claims with expert opinion evidence of the standard of care unless the negligence alleged is sufficiently non-technical to be cognizable by laypersons.[8] The Balls rely on the second: because a party moving for summary judgment must demonstrate the absence of any genuine issue of material fact as to all claims, complete summary judgment cannot be entered against the opponent if the movant only provides evidence regarding some of the claims.

Notwithstanding the Balls' significant delays in responding to discovery and producing their expert's report, we agree with the Balls and affirm summary judgment only as to those claims addressed by the law firm's expert.

#### 1. Propriety of complete summary judgment

As a general proposition, a defendant is not entitled to complete summary judg-

---

4. *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1200 (Alaska 1998).

5. *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

6. *Id.*

7. *See Drake v. Wickwire*, 795 P.2d 195, 197 (Alaska 1990).

8. *See Kendall v. State, Div. of Corrs.*, 692 P.2d 953, 955 (Alaska 1984) (requiring expert testimony to establish standard of care in medical malpractice cases when negligence not evident to laypersons); *see also Drake*, 795 P.2d at 197 (extending *Kendall* rule to legal malpractice cases).

ment in Alaska unless it demonstrates as to each claim against it that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[9] This is the rule even if the defendant's motion addresses an element which is essential to the plaintiff's case and on which the plaintiff would ultimately bear the burden of proof at trial.[10]

■ The expert report Birch, Horton submitted to support its summary judgment motion addressed only the claim of negligent document preparation. The report contained this limiting statement:

> I have not been retained to express an opinion on any involvement Mr. Horton may or may not have had in the course of negotiations which led to the execution of the Stock Purchase and Sale Agreement, dated October 25, 1991, the First Amendment to Stock Purchase and Sale Agreement, dated November 19, 1991, and the related closing documents other than the light shed on Mr. Horton's participation in those negotiations by the documents which he drafted and related correspondence.[11]

The report expresses the general opinion that "the transaction documents drafted by Mr. Horton were prepared in conformance with the standard of care applicable to attorneys at law in Alaska in 1991." The remainder of the report relates to particular provisions or aspects of the documents Horton prepared. The report expresses no explicit opinion concerning claims other than the document-preparation claim, and cannot be fairly read to contain implicit opinions about any other claims.

The law firm argued in the superior court that the expert's report addressed each of the Balls' malpractice claims.[12] The order granting summary judgment noted that the law firm's expert's "testimony is uncontradicted." The order denying reconsideration rejected the Balls' argument that the firm did not provide evidence addressing their other liability theories, and stated, "Mr. Cole's opinion addresses each and every claim of malpractice raised by Plaintiffs in their Disclosures." But in fact, the Cole report addressed only the Balls' document-preparation claim. It did not discuss the other liability claims the Balls had identified in their complaint, discovery responses, and summary judgment opposition.[13] And it did

9. Alaska R. Civ. P. 56(c); *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 450 (Alaska 1974).

10. *Trombley v. Starr–Wood Cardiac Group, PC*, 3 P.3d 916, 924 (Alaska 2000); *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437–38 (Alaska 1995).

11. The expert apparently assumed that nothing other than document preparation was relevant to the Balls' claims. He had received a copy of a letter from attorney Horton to one of the plaintiffs, saying that the defendants had primary responsibility for preparing documents, creating debt and collateral instruments, and handling the stock transfer, and inferred from this letter that Horton's responsibilities did not include negotiation.

12. The law firm's summary judgment memorandum asserted that its expert "ha[d] opined that Defendants were not negligent in their representation of Plaintiffs," and implied that the Cole report fully rebutted any claim that the defendants were liable. Its August 2000 reply memorandum asserted that the Cole report "address[ed] and refute[d] each allegation of malpractice in Plaintiffs' Disclosures."

13. The Balls' 1997 complaint alleged that the law firm "had a duty of due care to negotiate the sale of the Stock in the Corporations and to draft the documents of sale and closing for the sale of Stock in the Corporations consistent with [the] standard of care applicable to attorneys in Anchorage at the time." It also alleged that the breach of that duty in negotiating the sale and preparing the documents harmed the Balls.

The Balls' April 1998 disclosures asserted that "[d]efendants failed to meet the standard of care of the legal profession to which they were obligated under the contract with the Plaintiffs in negotiating the sale [of] the Stock and in drafting the documents for the sale of the Stock in the Corporations." Their July 2000 supplemental interrogatory answers, signed under oath by Gerald Ball, alleged, among other things, negligent negotiation as well as negligent document preparation. The court never ordered those responses struck as untimely, nor did the law firm ask the court to do so. The Balls served their supplemental interrogatory answers after the trial date was vacated and before a new trial date was set and a month before the law firm filed its reply memorandum supporting its summary judgment motion.

The Balls' August 15, 2000 opposition to the summary judgment motion argued that the report of the law firm's expert did not encompass the Balls' other liability theories and summarized those theories in some detail.

not express a blanket no-fault opinion that might have encompassed all possible claims.

Because the report of the law firm's expert did not address all of the grounds on which the Balls claimed the firm was negligent, the firm did not make out a prima facie showing for complete summary judgment on all of the Balls' claims.[14] Under our standard summary judgment analysis, the Balls would have had no obligation to demonstrate that a genuine factual issue existed.[15]

The law firm argues, however, that the Balls' complete failure to produce expert opinion evidence of any breach of professional duty makes the scope of the Cole report irrelevant; it argues that even if it had submitted no report it would have been entitled to complete summary judgment absent any expert evidence of malpractice.

The law firm founds its arguments on the proposition that professional malpractice plaintiffs must support their claims with expert opinion evidence of the standard of care unless the negligence alleged is sufficiently non-technical to be cognizable by laypersons. It cites *Kendall v. State, Division of Corrections* and *Drake v. Wickwire* in support of this general proposition.[16] To support its assertion that the Balls' failure to produce any expert evidence of malpractice warranted complete summary judgment, the law firm relies on cases from other jurisdictions discussing summary judgments, including cases applying the federal summary judgment standard.[17] It also relies on two Alaska cases, *Zok v. Collins*[18] and *Gerber v. Juneau Bartlett Memorial Hospital.*[19]

It is not obvious why a professional malpractice defendant moving for summary judgment should be relieved of a summary judgment movant's usual threshold duty of making out a prima facie showing addressing the claims against it. And it is not obvious why it should be permitted to place on the non-movant plaintiff the burden of proving elements of the plaintiff's case at the summary judgment stage if the defendant does not make that prima facie showing.

But this case does not require us to decide whether a professional malpractice plaintiff must submit evidence of a breach of the applicable professional standard of care in order to avoid summary judgment if the movant does not make out a prima facie showing that there was no breach. The law firm in this case did offer expert evidence in an attempt to make out a prima facie showing of lack of fault. And it argued that its expert's report had refuted each allegation of malpractice. The superior court's comments in denying reconsideration suggest that it accepted that argument. Moreover, unfortunate circumstances were partly responsible for the Balls' delay in producing an expert report. Even though the Balls could not have taken their case to a jury without expert evidence establishing fault, the rescheduled trial was not to begin until April 2001, discovery had not closed, and other pretrial dates had been or would be rescheduled. Further, absent a prima facie showing that the law firm did not breach an applicable duty, the Balls' discovery responses, including their July 2000 supplemental interrogatory answers, provided a factual framework sufficient to demonstrate to the superior court at the summary judgment stage some six months before trial that the plaintiffs' legal malpractice claims were not on their face completely without merit. And at this

---

**14.** *Philbin v. Matanuska–Susitna Borough,* 991 P.2d 1263, 1265 (Alaska 1999) (holding movant bears initial burden of proving through admissible evidence (1) absence of genuine fact disputes, and (2) its entitlement to judgment as matter of law). *See also Alaska Travel Specialists, Inc. v. First Nat'l Bank of Anchorage,* 919 P.2d 759, 762 (Alaska 1996) (quoting *Shade v. Co & Anglo Alaska Serv. Corp.,* 901 P.2d 434, 437 (Alaska 1995) ("The non-moving party need not demonstrate the existence of a genuine issue 'until the moving party makes a prima facie showing of its entitlement to judgment on established facts.' ")).

**15.** *Shade,* 901 P.2d at 437 (citations omitted).

**16.** *See Drake v. Wickwire,* 795 P.2d 195, 197 (Alaska 1990); *Kendall v. State, Div. of Corrs.,* 692 P.2d 953, 955 (Alaska 1984).

**17.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311 (9th Cir.1995).

**18.** 18 P.3d 39 (Alaska 2001).

**19.** 2 P.3d 74 (Alaska 2000).

stage of the proceedings, it was not yet critical that the plaintiffs had not submitted an expert opinion to support the liability theories the Cole report did not discuss. The superior court at this point had less need for an opinion addressing each theory of legal malpractice than would a jury of non-lawyers at trial.

No Alaska case compels a different result. *Gerber* and *Kendall* were medical malpractice cases in which expert advisory panel reports provided affirmative expert evidence that there was no professional breach.[20] The plaintiffs in both cases failed to offer opposing expert evidence.[21] They therefore failed to rebut the movants' prima facie showings.[22] In *Zok v. Collins* the legal malpractice plaintiff did not designate experts to testify at trial.[23] After the deadlines had passed for listing witnesses, disclosing experts and their opinions, and completing discovery, the defendant moved for summary judgment and argued that the plaintiff would be unable to prove the elements of his malpractice claims requiring expert testimony. Moreover, the superior court there found that the plaintiff had made a "strategic decision" not to hire experts. In comparison, here new pretrial dates had been or were to be set and the Balls consistently expressed an intention to offer opinion evidence supporting their claims.

▆ The law firm has identified no viable alternative ground for affirming the complete summary judgment. It does not argue that the summary judgment can be justified as a

sanction. The superior court did not rely on a sanction rationale and did not make, even implicitly, findings that would have permitted a litigation-ending sanction.[24] Finding vexatious delays and misrepresentations regarding the availability of expert testimony, the superior court awarded the law firm enhanced attorney's fees. But these findings would not have justified litigation-ending sanctions. And, given disputes about the extent to which the plaintiffs' earlier discovery and disclosure deficiencies were attributable in part to their incapacitated counsel, we cannot find willfulness as a matter of law on this record.

Summary judgment should not have been granted as to liability claims not addressed in the Cole report. It was therefore error to grant complete summary judgment.

## 2. Propriety of partial summary judgment

Because the law firm supported its summary judgment motion with expert opinion evidence that there was no merit to the Balls' document-preparation theory, in order to avoid partial summary judgment the Balls had to demonstrate either the existence of a genuine, material fact dispute,[25] or their need for more time to oppose the motion.[26] The Balls, however, did not show that there were genuine fact disputes inherently rebutting the detailed opinions expressed in the Cole report. They did not offer evidence creating any factual dispute about the assumptions

**20.** *Gerber,* 2 P.3d at 75; *Kendall,* 692 P.2d at 954.

**21.** *Gerber,* 2 P.3d at 75; *Kendall,* 692 P.2d at 955.

**22.** *Gerber,* 2 P.3d at 78; *Kendall,* 692 P.2d at 955.

**23.** *Zok,* 18 P.3d at 41.

**24.** *See* Alaska R. Civ. P. 37(b)(2) (addressing sanctions for discovery violations); *see also Hikita v. Nichiro Gyogyo Kaisha, Ltd.,* 12 P.3d 1169, 1176 (Alaska 2001) ("[A] trial court may not issue litigation-ending sanctions without first exploring possible and meaningful alternatives to dismissal.") (internal quotation marks and citation omitted).

At a minimum, no litigation-ending sanction would have been justified without a finding of willfulness. *Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 119 (Alaska 1993).

**25.** *See* Alaska R. Civ. P. 56(c); *see also Yurioff v. Am. Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990); *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975).

**26.** Alaska Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

underlying Cole's opinions. And they did not rebut his opinions with contrary expert opinions.

■ Legal malpractice plaintiffs in Alaska must support their claims with expert opinion evidence unless the negligence alleged is sufficiently non-technical to be cognizable by laypersons.[27] The Balls' malpractice claims were not sufficiently non-technical to be evident to laypersons. The interrogatory answers signed by Gerald Ball, a layperson, were not sufficient to create a genuine fact dispute for purposes of rebutting an expert opinion clearly expressed on a topic which required expert evidence.[28] The Balls' failure to offer expert opinion evidence responding to the Cole opinions is therefore fatal to the claim of negligent document preparation, unless, as they also argue, it was an abuse of discretion to grant summary judgment given a "distant" trial date and open discovery.

■ The Balls' appellate briefs do not cite or rely on Civil Rule 56(f), although the Balls requested a thirty-day continuance under that rule in the superior court for the purpose of obtaining an expert report to support their claims and rebut the Cole report. We have held that requests made under Rule 56(f) should be granted freely because Rule 56(f) provides a safeguard against premature grants of summary judgment.[29] We review for abuse of discretion the denial of a motion for a Civil Rule 56(f) continuance.[30] But the Balls do not claim that the court denied any requested continuance. They argue instead that it should have waited "longer" for their expert's opinion.

■ The record does not justify a conclusion that the superior court "abused its discretion by not waiting longer." Notwithstanding the impediments and delay caused by the incapacity of their first litigation attorney, the Balls had adequate time to obtain expert opinions to rebut the opinions in the Cole report. That report was first served on the Balls in May 1999, and was served again in January 2000 with the summary judgment motion. The Balls' successor counsel recognized the importance of obtaining an expert opinion supporting the Balls' claims, and the weight the superior court placed on producing such a report. On June 1, 2000 the Balls' lawyer told the superior court he needed "thirty or forty-five days," and the court responded that "forty-five days is reasonable," but warned counsel that "I need to tell you that I'm going to hold you to that." At the July 13, 2000 hearing, shortly before the forty-five day period was to expire, the Balls' lawyer represented, among other things, that he had conferred with the New York attorney and the court ordered counsel to produce the expert report by August 15.

On August 15 the Balls did not produce a report as ordered; instead, their August 15 memorandum moved under Civil Rule 56(f) for an additional thirty days in which to obtain a report. At an August 22 hearing, their attorney announced that a new expert had been engaged who would provide a re-

---

**27.** *Kendall,* 692 P.2d at 955 (applying rule in medical malpractice case and affirming defendants' summary judgment because Kendall did not carry her burden by presenting expert testimony rebutting defendants' showing that there was no genuine issue as to negligence). Similarly, in *Kaiser v. Sakata,* 40 P.3d 800, 805 (Alaska 2002), we held that summary judgment was appropriate in a medical malpractice case when a pro se plaintiff failed to produce countervailing expert testimony in response to defense expert evidence in support of summary judgment. In *Drake,* 795 P.2d at 197–98, we agreed with the superior court's conclusion that expert testimony was required to prove that a lawyer had breached the professional standard of care, but held the lawyer was negligent as a matter of law. In *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745, 761 (Alaska 1992), we reiterated our statement in *Drake* that a legal malpractice plaintiff must offer expert testimony to show a breach of an attorney's duty of care unless the negligence is sufficiently non-technical to be evident to laypersons. In *Zok,* 18 P.3d at 42–43, we affirmed in part summary judgment for the defendant attorney because his former client did not support his claim with an expert's opinion; we reversed the summary judgment as to those claims not requiring expert testimony, such as claims alleging failure to oppose motions.

**28.** *See Zok,* 18 P.3d at 42–43.

**29.** *Gamble v. Northstore P'ship,* 907 P.2d 477, 485 (Alaska 1995) (citations omitted).

**30.** *Kessey v. Frontier Lodge, Inc.,* 42 P.3d 1060, 1062 (Alaska 2002).

port "within two or three weeks," i.e., by the end of the second week of September. At the same hearing, defense counsel correctly informed the superior court that the summary judgment motion was "ripe" and that the Balls had not requested oral argument; the court stated that it would "turn it over to a law clerk." The superior court did not expressly grant or deny the Balls' thirty-day request or approve the Balls' plan to submit the report the second week of September. But it did not enter summary judgment against the Balls until September 20, 2000, about a week after the requested thirty-day continuance would have expired. The Balls did not submit an expert's report until they moved for reconsideration on September 28.

Before the court granted summary judgment, the Balls had repeatedly missed deadlines for producing their expert's report. The reasons the Balls gave for missing those deadlines were not so compelling that the court was obliged to accept them. And when they moved for reconsideration, the Balls offered absolutely no explanation for why they had not submitted the expert's report within the thirty-day extension they had requested or before the court entered summary judgment.

 It would defeat the utility of summary judgment to permit a non-movant to delay indefinitely submitting evidence rebutting the movant's prima facie showing. The Balls do not specify how much more time they should have been given, but the court did not rule until after the time they last requested had expired. Their failure to seek additional time before the court ruled precludes a claim that the court sua sponte should have given them more time than they had asked for or should have delayed ruling on the "ripe" summary judgment motion for some unknown period.[31]

 We also reject any argument that the court should have accepted the report of the Balls' expert and denied even partial summary judgment. The Balls first submitted the report with their motion for reconsideration. Materials and arguments submitted for the first time on reconsideration may not be used to establish that the original ruling was in error.[32]

Partial summary judgment was appropriate because the law firm made out a prima facie showing of entitlement to summary judgment on the liability claim addressed in its expert's report. We therefore remand for entry of partial summary judgment as to those negligence claims covered by the law firm's expert's report.

### C. Enhanced Attorney's Fees Award

 The superior court awarded the law firm attorney's fees of $75,841–fifty percent of its incurred defense fees. The order stated that "[t]he fee is enhanced due to vexatious delays and misrepresentations to the court and defense counsel concerning expert testimony availability." The Balls argue that it was error to award enhanced fees.

Alaska Civil Rule 82(b)(3) permits enhanced fee awards under some circumstances, but it is unnecessary to decide whether it was error to enhance the award here. Because the law firm was not entitled to complete summary judgment and because we remand for further proceedings, we vacate the attorney's fees award. We vacate the costs award for the same reason.

### IV. CONCLUSION

Because defendants only made out a prima facie showing supporting partial summary judgment, we REVERSE the judgment, VACATE the awards of attorney's fees and costs, and REMAND for further proceedings, including entry of partial summary

---

**31.** *See D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001) (holding no plain error for superior court failing to sua sponte extend deadline for response to summary judgment motion when non-movant was adequately represented by counsel and did not request extension or argue how he would have used extension); *State, Dep't of Revenue v. Mitchell*, 930 P.2d 1284, 1288 (Alaska 1997) (quoting *Burford v. State*, 515 P.2d 382, 383

(Alaska 1973)) (holding not plain error superior court's failure to raise waiver issue sua sponte because alleged error did not affect substantive rights and was not obviously prejudicial).

**32.** Alaska R. Civ. P. 77(k); *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997).

judgment as to the claims addressed in the report of the law firm's expert.

MATTHEWS, Justice, not participating.